UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOREEN LYNETTE THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-1787-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is granted, defendant's motion is denied, and the matter is remanded for further consideration.

I.   BACKGROUND

Plaintiff filed an application for SSI on June 25, 2010, alleging that she had been disabled since June 12, 2008. Administrative Record ("AR") 200-213. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 107-112, 116-121. On March 7, 2012, a hearing was held before administrative law judge ("ALJ") William C. Thompson, Jr. *Id.* at 71-87. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id.*

On May 4, 2012, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 13-27. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since June 25, 2010, the application date (20 CFR 416. 971 *et seq*.).

2. The claimant has the following severe impairments: morbid obesity; poorly controlled hypertension; adjustment disorder secondary to medical condition (20 CFR 416.920(c)).

   * * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

\* \* \*

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift or carry up to 20 pounds occasionally, 10 pounds frequently.  She can sit, stand or walk up to 6 hours each.  She should not be required to climb ladders, ropes or scaffolds, or work around hazardous machinery.

\* \* \*

5. The claimant is unable to perform any past relevant work (416.965 [sic]).

\* \* \*

6. The claimant was born on July 31, 1965 and was 44 years old, which is defined as a "younger individual age 18-49," on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the State economy that the claimant also can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 25, 2010, the date the application was filed (20 CFR 416.920(f)).

*Id.* at 16-26.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id*. at 8-9, and on July 10, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

II.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

3

*Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) failing to file a complete administrative record; (2) failing to obtain medical expert testimony regarding whether plaintiff's obesity was medically equivalent to a listed impairment; (3) failing to provide a proper rationale for discounting plaintiff's subjective credibility; (4) failing to fully account for his own findings of moderate limitations in concentration, persistence, or pace; and (5) failing to rely upon VE testimony tendered in response to a complete hypothetical question. ECF No. 15-1 at 12-28.

A. The Commissioner's Failure to File a Complete Record is Harmless

Plaintiff first argues that the administrative record in this case is incomplete because it does not include a final decision relating to plaintiff's previous application for disability benefits, as well as documents related to her prior application. ECF No. 15-1 at 12-14. Plaintiff contends that these documents should have been included in the present record because the ALJ relied on this evidence in concluding that she was not disabled. *Id*.

According to the ALJ's decision, plaintiff previously filed an application for SSI benefits. AR 13. That application was purportedly denied on February 22, 2010. *Id*. Although the prior

1 decision is discussed by the ALJ, the administrative record filed in this case does not contain a
2 final version of that decision.  Instead, as noted by plaintiff, the record filed in this action contains
3 a working draft containing notations in the margins with proposed corrections and lacks a proper
4 signature.  Although plaintiff brought this discrepancy to the Commissioner's attention, in her
5 motion for summary judgment the Commissioner argued that "[t]he 2010 decision is included in
6 the record (AR 88-98)," ignoring the obvious: that the version contained in the record is only a
7 draft.  ECF No. 16 at 6; *see* AR 88-98.  Clearly, the final version is missing.

8 In light of this glaring omission, the court ordered the Commissioner to submit a final and
9 signed copy of the February 22, 2010 decision.  ECF No. 20.  In response, the Commissioner
10 explains that the version of the prior decision filed in the record is the "best and only available
11 copy."  ECF No. 21 at 1.  The Commissioner argues that the final version of the February 22,
12 2010 decision is not needed for resolution of this case, as the ALJ primarily relied on the prior
13 decision for its res judicata effect, which is not at issue in this case.  ECF No. 21 at 1-2.

14 Plaintiff argues that argues that contrary to the Commissioner's contention, the ALJ relied
15 heavily on the draft copy of the prior decision and therefore the court cannot fully analyze
16 whether the ALJ's decision is supported by substantial evidence.  ECF No. 24 at 2-4.  A review of
17 the ALJ's decision indicates that he relies, at least to some degree, on the prior adverse decision.
18 Accordingly, a properly authenticated final version of that decision should have been included in
19 the record.  As it is not, the record is incomplete.  As plaintiff argues, "[i]f the reviewing court is
20 'unable to engage in meaningful or informed judicial review due to an incomplete administrative
21 record, the court has the authority to remand the case.'"  ECF No. 15-1 at 14 (citing *Strogish v.*
22 *Astrue*, 2008 U.S. Dist. LEXIS 101344, at *45 (W.D. Pa. Dec. 16, 2008)).  However, "[s]o long
23 as the missing document does not preclude effective judicial review, then the court may proceed
24 without it."  *Hynek v. Astrue*, 2012 U.S. Dist. LEXIS 17776, at *21 (D. Mont. Feb. 13, 2012)
25 (citing *Varney v. Sec of HHS*, 846 F.2d 581, 583 (9th Cir. 1988) (*superseded on other grounds*,
26 *Bunnell v. Sullivan,* 912 F.2d 1149, 1154 (9th Cir. 1990)).  Here the failure to submit a final and
27 accurate copy of the prior decision is inexcusable and unexplained.  Nonetheless, its absence from
28 the record does not necessitate remand in this case.

5

1    The issue in plaintiff's case is whether she has been disabled since June 25, 2010, the date
2 she filed her current SSI application. *See* AR 26. The "[e]ffective onset date in an SSI case is the
3 date the application is filed . . . because SSI is not payable for a period prior to the claimant's
4 application." *Smith v. Astrue*, 2008 U.S. Dist. LEXIS 53089, at *3 n.2 (C.D. Cal. Jul. 7, 2008)
5 (citing *Meraz v. Barnhart*, 300 F. Supp. 2d 935, 940 n.4 (C.D. Cal. 2004); *Casner v. Colvin*, 958
6 F. Supp. 2d 1087, 1089 n.2 (C.D. Cal. Aug. 2, 2013) ("SSI payments are not made retroactively
7 but are prorated for the first month for which eligibility is established after application. . . .")); *See*
8 *also Miller v. Astrue*, 2009 U.S. Dist. LEXIS 45236, at *9 n.1 (E.D. Wash. May 29, 2009)
9 ("Although Plaintiff alleged an onset date of November 11, 1996, onset for SSI is established as
10 of the date of filling and no retroactive benefits are available."); Social Security Ruling 83-20,
11 1983 SSR LEXIS 25.

12    As detailed below, the ALJ decision addresses the medical evidence pertinent to the time
13 period at issue. While the ALJ cited to the prior adverse decision, and obviously relied on it to
14 some degree, the references to that decision merely highlight any changes in plaintiff's
15 impairments, and do not render the ALJ's decision invalid. Each of the ALJ's citations to the
16 prior decision was accompanied by discussion of evidence from the instant record that analyzed
17 plaintiff's current impairments. Additionally, it is clear from a review of the draft and instant
18 decision, that with the exception of one statement regarding plaintiff's credibility, which is
19 discussed in detail below, the ALJ did not rely on evidence underlying the prior decision.

20    Moreover, the ALJ explicitly found that there had been a change in circumstances to
21 plaintiff's condition, and therefore did not apply a presumption of continued nondisability. AR
22 13; *see Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (The claimant, in order to overcome
23 the presumption of continuing nondisability arising from the first administrative law judge's
24 findings of nondisability, must prove 'changed circumstances' indicating a greater disability.").
25 /////
26 /////
27 /////
28 /////

6

Thus, despite the lack of a copy of the previous decision, that prior decision was not material to the ALJ's decision to deny benefits. Accordingly, the present record is adequate to allow for judicial review of the ALJ's decision and the court declines to remand the matter on this basis.[2]

### B. The ALJ Properly Assessed Plaintiff's Obesity

Plaintiff next argues that the ALJ failed to properly assess the impact her obesity has on her ability to function in a sustained manner as required by Social Security Ruling ("SSR") 02-1p. Specifically, plaintiff argues the ALJ erred by (1) failing to consider whether the cumulative effects of plaintiff's morbid obesity are medically equivalent to a listed impairment and (2) failing to obtain medical expert testimony as to whether plaintiff's obesity was equivalent to a listed impairment in light of new evidence added to the record after the last review by a state agency medical consultant. ECF No. 15-1 at 14-19.

Obesity is "a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p, 2002 SSR LEXIS 1. Obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." *Id.* "The combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* In assessing a claimant's RFC, the ALJ "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* "As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citing SSR 01-02p, 2002 SSR LEXIS 1).

Plaintiff bears the burden of demonstrating that her impairments or combination of impairments meet or equal the listing. *See* 20 C.F.R. 416.920(a)(4)(iii). To satisfy this burden, plaintiff must show that she meets every element described in the listing. *See* 20 C.F.R. 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (to establish equivalency to "a listed impairment, [the plaintiff] must present medical findings equal in severity to *all* the criteria for

---

[2] However, as discussed herein, the matter must be remanded based on the ALJ's failure to properly assess plaintiff's RFC. On remand the Commissioner shall not consider evidence that is not part of the record or otherwise not available to the plaintiff.

the one most similar listed impairment.") (emphasis in original).  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683.  It is the plaintiff's responsibility to present a theory on how her obesity impacts the equivalency determination.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ did not err in failing to consider equivalency where claimant did not offer any theory, plausible or otherwise, as to how his impairments equaled a listing impairment).

Here, the ALJ found that the objective medical evidence "[did] not suggest that the cumulative effects of [plaintiff's] obesity meet or equal criteria set forth in any applicable section of the Listing of Impairments. . . ." AR 19.  While plaintiff disputes this finding, she has failed to satisfy her burden of proffering a theory on how her impairments equal a listing.  At the hearing, plaintiff's counsel simply identified a number of plaintiff's impairments, including obesity, bladder problems, balance issues requiring a walker, high blood pressure, obstructive sleep apnea, and congestive heart failure, and argued that "perhaps" the combination of these impairments could equal a listing.  AR 75.  Plaintiff did not present any theory on how such impairments equaled a particular listing.  Indeed, she did not even identify any specific listing her impairments allegedly equaled.

Furthermore, her motion for summary judgment does not identify a specific listing her impairments equal.  Instead, plaintiff argues that the ALJ was required to obtain an updated medical opinion from a medical expert because she submitted additional medical evidence that could have modified the state agency medical consultant's finding that she did not meet a listing. ECF No. 15-1 at 15-17.  Plaintiff explains that "subsequent to the review by the State agency conducted on January 21, 2011, new evidence was added to the record documenting that Ms. Thompson was prescribed a four wheel walker which . . . certainly impacts her ability to ambulate effectively and is a basis for finding that he obesity is medically equivalent to a listed impairment." *Id*. at 17.

Plaintiff appears to suggest that had a medical expert considered evidence that she was prescribed a walker, the expert may have found that her impairments equaled listing 1.02A due to

an inability to ambulate effectively. *Id.* at 16. An ALJ is only required to consult a medical expert if he determines that the new evidence would alter the medical opinion in the record. *See* SSR 96-6p, 1996 SSR LEXIS 3, at *9-10 ("An [ALJ] . . . must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.").

Listing 1.02, Major dysfunction of a joint(s) (due to any cause), is "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," with "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.02.

SSR 02-1p provides that [i]f the obesity is of such a level that it results in an inability to ambulate effectively, . . . it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A." Listing 1.00 provides:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, *the inability to walk without the use of a walker*, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b) (emphasis added).

At the hearing, the ALJ denied plaintiff's motion for a post hearing examination, stating that there was "enough evidence in the case file between the decision process of the disability

determination service and the medical records" to evaluate the case. AR 86. The ALJ permissibly found that the new evidence indicating that plaintiff was prescribed a walker did not necessitate obtaining further medical opinion evidence. The medical record does not demonstrate that plaintiff was prescribed a walker due to an inability to walk or due to significant worsening in her impairments. Instead, the record indicates that plaintiff specifically requested a walker, as well as a shower chair, because "it would help her to be more active." AR 458. Furthermore, Dr. Bui, the physician that prescribed the walker, did not find that plaintiff could not effectively ambulate. Rather, he noted he was prescribing a walker "to encourage her with mobilization." *Id*. at 459. Thus, the evidence does not show that plaintiff had an "inability to walk without the use of a walker," as suggested by plaintiff. *See* ECF No. 15-1 at 16.

Accordingly, the ALJ did not err in evaluating whether plaintiff's impairments, including her obesity, equaled one of the listed impairments.

### C. The ALJ Properly Rejected Plaintiff's Subjective Complaints and Credibility

Plaintiff next argues that the ALJ erred by failing to provide proper rationale for discounting plaintiff's subjective complaints and credibility. ECF No. 15-1 at 20-24.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345–47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of*

*HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

Plaintiff testified that she worked in childcare for three years, but stopped working when the mother of the children she cared for was laid off. AR 76-77. As for her impairments, plaintiff testified that she requires assistance to get out of bed, bathe, clean herself after using the bathroom, and put on her shoes. *Id.* at 77, 82. She stated that she cannot walk half a block without "gasping for air," or reach below her waist, and has falling spells, bladder and bowel control issues, frequent shortness of breath, difficultly walking and talking, and depression, but admitted that she has not received any kind of treatment for depression. *Id.* at 77-80. Plaintiff also testified that she takes one to one and a half hour naps three to four times per day, experiences swelling in her hands and feet about four times a week, and gets boils on her arms, breasts, and lower stomach. *Id.* at 83.

The ALJ did not find plaintiff's "statements regarding her pain and other symptoms particularly convincing or credible." AR 23. The ALJ provided several specific reasons for reaching this conclusion. First, the ALJ found that plaintiff's allegations were inconsistent with her previous admissions. *Id.* at 23-25; *See Smolen*, 80 F.3d at 1284 (an ALJ may rely on inconsistent testimony in assessing a claimant's credibility). Specifically, the ALJ noted that at a hearing related to her previous application for SSI benefits, plaintiff reported that she no longer went shopping,[3] yet in August 2011 she told Dr. Kalman that she did her own shopping. *Id.* at 24, 96, 439. The ALJ also noted that in plaintiff's Exertional Activities Questionnaire, plaintiff indicated she could not walk "any distance" or clean her house. *Id*. at 240-241. However, Dr.

---

[3] The transcript from the hearing held in relation to plaintiff's prior application for SSI benefits was included in the administrative record filed in this action. *See* AR 32-70. At the prior hearing plaintiff did not explicitly state that she no longer goes shopping. Instead, she stated that she only leaves the house to go to the church. *See id*. at 66-67.

Kalman noted that plaintiff reported being able to clean her house, shop, cook, and manage her own transportation. *Id.* at 439.

Further, the ALJ noted inconsistencies in plaintiff's statements as to why she stopped working. *Id.* at 24. Plaintiff reported to Dr. Kalman that she stopped working because she was "overwhelmed emotionally." *Id.* at 437. However, at the March 7, 2012 hearing and in her Disability Report, plaintiff stated she stopped working because the mother of the children she cared for lost her job. *Id*. at 77, 220. Thus, as noted by the ALJ, it appears plaintiff's "original onset date corresponds not to when she became unable to work due to disability, but because the children she was watching moved away." *Id*. at 24. The ALJ logically concluded that plaintiff's statements "to the contrary indicate a deliberate attempt to embellish the facts." *Id.*[4]

The ALJ further found that plaintiff's allegations were not credible because they were not supported by objective medical evidence. While an ALJ may not rely solely on a lack of objective medical evidence to support an adverse credibility finding, it is a relevant consideration. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 595. As for pain, plaintiff often reported to her physicians that she was in no pain or demonstrated no acute distress. AR 304, 328, 396, 415, 452, 458, 463. The ALJ noted an instance when plaintiff reported pain at a seven out of ten to Dr. Bui, but observed that plaintiff reported no pain to her OB-GYN on the same day. *Id.* at 461-463. Plaintiff also testified that she required a walker, but was observed by several sources to be ambulatory and have a normal gait. *Id.* at 358, 376, 436.

---

[4] The ALJ also observed that in plaintiff's prior application for disability benefits, she stated that she stopped working because of her disabling condition. Plaintiff argues that the ALJ should not have relied on plaintiff's statement from her original disability application as it is not in the instant record. The court agrees that it was not appropriate to rely on evidence not in the record and finds that the statement purportedly from plaintiff's original disability application cannot constitute clear and convincing reason for discrediting plaintiff's subjective complaints. However, such erroneous reliance here was harmless. The ALJ specifically addressed several other inconsistent statements made by plaintiff in the instant record and gave other clear and convincing reasons for discrediting plaintiff's subjective complaints. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that a court may affirm an ALJ's decision "under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

In fact, treatment notes indicate that plaintiff was prescribed a walker to "encourage her with mobilization," not because it was necessary for ambulation. *Id.* at 459. The ALJ reasonably concluded that the lack of objective medical evidence does not support plaintiff's allegations of pain or need for a walker.

Finally, the ALJ discredited plaintiff's subjective complaints because she failed to consistently take her hypertension medication. *Id.* at 24. An ALJ is permitted to consider an unexplained or inadequate explanation for failing to follow a prescribed course of treatment in assessing a plaintiff's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 21012); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that where a claimant complains of disabling pain but fails to seek treatment, or fails to follow prescribed treatment, an ALJ may use such failure as a basis for finding the complaint unjust or exaggerated). When plaintiff was hospitalized in May 2010, her blood pressure was 212/104, but it was noted that she had not been taking her prescribed hypertension medication for the past year due to lack of insurance. AR 304-305. When plaintiff consistently took her hypertension medication, her blood pressure went down to 160/102 in June 2010 and 142/78 in July 2010. *Id.* at 413, 416. The ALJ noted that plaintiff's blood pressure was elevated to 200/80 on November 23, 2010; however, at that time she was not taking the prescribed dose of medication and refused to change medications. *Id.* at 395-397. By April 2011, after plaintiff resumed taking the correct dosage of medication, her blood pressure was down to 132/90. *Id.* at 450. The medical record demonstrates that the elevations in plaintiff's blood pressure correlate with her failure to follow her prescribed treatment plan. Thus, the ALJ properly discredited plaintiff's subjective complaints for failure to comply with her prescribed treatment plan.

Contrary to plaintiff's contention, the ALJ provided numerous clear and convincing reasons for discrediting plaintiff's subjective complaints, each supported by substantial evidence in the record. Accordingly, the ALJ did not err in assessing plaintiff's credibility.

### D. The ALJ Failed to Account for His Own Finings of Moderate Impairments

Plaintiff further argues that the ALJ erred in assessing her RFC by failing to fully account for his own finding of moderate limitations in concentration, persistence, or pace. ("RFC"). ECF

No. 15-1 at 24-27. At step-three of the sequential process, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. AR 19. The ALJ's RFC determination, however, did not include any mental limitations. *See id.* at 20. Plaintiff argues that the RFC of light work fails to account for the ALJ's finding that plaintiff has moderate difficulties with concentration, persistence, or pace. ECF No. 15-1 at 24-27.

Defendant first argues that "[b]ased upon the overall record in this case, the ALJ's finding of no mental functional limitations was reasonable." ECF No. 16 at 12. Defendant's argument ignores the ALJ's own findings. The ALJ did not conclude that plaintiff has no mental impairments. Rather, the ALJ explicitly found that plaintiff had "moderate difficulties in maintaining concentration, persistence and pace." AR 19. Despite this finding, the ALJ's RFC determination did not include any mental limitations. *Id*. at 20. Furthermore, the ALJ's decision provides no explanation for why his own finding of moderate impairments in concentration, persistence, or pace was not included in the RFC. *See id*. at 20-25.

Apparently aware of the incongruity between the RFC and the ALJ's own finding of moderate mental impairments, the Commissioner further argues that any error in failing to include in the RFC moderate impairments in concentration, persistence, and pace was harmless, as all the jobs identified by the ALJ at step-five were unskilled. ECF No. 16 at 13. The Commissioner's argument relies on the Ninth Circuit's holding in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). ECF No. 16 at 13. In that case, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, and pace where the assessment is consistent with restrictions identified in the medical testimony." *See id*. at 1174. The medical testimony relied upon by the ALJ in *Stubbs–Danielson* found that the plaintiff retained the ability to perform simple tasks notwithstanding some evidence that the plaintiff had deficiencies in pace. *Id*.

However, the Ninth Circuit has held, in an unpublished case, that *Stubbs–Danielson* is not applicable to cases where the evidence establishes that the plaintiff has restriction in concentration, persistence, or pace. *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The medical testimony in *Stubbs–Danielson*, however, did not establish any

1   limitations in concentration, persistence, or pace.  Here, in contrast, the medical evidence

2   establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence,

3   or pace.  *Stubbs–Danielson*, therefore, is inapposite.").

4      In the present case, the ALJ found that the evidence establishes that plaintiff has

5   "moderate difficulties in maintaining concentration, persistence and pace."  AR 19.  The ALJ's

6   RFC assessment therefore should have included limitations consistent with this finding.  *See*

7   *Lubin v. Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir.2013) ("Although the ALJ

8   found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace,

9   the ALJ erred by not including this limitation in the residual functional capacity determination or

10  in the hypothetical question to the vocational expert." . . . "Limiting Lubin 'to one to three step

11  tasks due to pain and prescription drug/marijuana use' did not capture the limitation in

12  concentration, persistence, or pace found by the ALJ.").  Furthermore, the ALJ's failure to

13  include such limitations was not harmless, as there is no indication that plaintiff retained the

14  ability to perform unskilled work despite having moderate difficulties in concentration,

15  persistence and pace.  *See Juarez v. Colvin*, 2014 U.S. Dist. LEXIS 37745, at *24 (C.D. Cal.

16  March 20, 2014) (since the ALJ expressly found moderate limitations in concentration,

17  persistence, and pace, "the ALJ's RFC determination should have included not only the limitation

18  to unskilled work, but also a moderate limitation in maintaining concentration, persistence, and

19  pace.").

20     The ALJ expressly found that plaintiff had moderate impairments maintaining

21  concentration, persistence, and pace, but failed to account for his own findings in assessing

22  plaintiff' s RFC.  In light of the ALJ's own findings, the court cannot find that plaintiff's RFC is

23  complete and therefore must remand the case for further consideration of plaintiff's RFC.[5]

24  /////

25  /////

26

27      [5] Because the court finds that remand is necessary for further consideration of plaintiff's
    RFC, the court need not address plaintiff's argument that the ALJ relied upon VE testimony that
28  did not accurately reflect her RFC.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;
2. The Commissioner's cross-motion for summary judgment is denied;
3. The matter is remanded for further consideration consistent with this order; and
4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 25, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE